Elizabeth PICHLER, et al.

v.

UNITE (Union of Needletrades, Industrial & Textile Employees AFL–CIO), et al.

No. Civ.A. 04–2841.

United States District Court, E.D. Pennsylvania.

Oct. 13, 2004.

Beth Lincow Cole, James Bucci, Spector Gadon & Rosen PC, Philadelphia, PA, for Plaintiffs.

Laurence M. Goodman, Mark Featherman, Willig Williams & Davidson, Philadelphia, PA, Susan M. Jennik, Thomas M. Kennedy, Kennedy Schwartz & Cure LP, New York City, Neil I. Ditchek Washington, DC, Thomas Herman Kohn, Markowitz & Richman, Philadelphia, PA, for Defendants.

## MEMORANDUM

DALZELL, District Judge.

Plaintiffs, eight employees of Cintas Corporation and five of their relatives, allege that the Union of Needletrades, Industrial & Textile Employees AFL–CIO ("UNITE") attempted to organize Cintas employees during the winter of 2003 and 2004. To reach the employees, UNITE allegedly recorded license plate numbers from vehicles parked outside of Cintas's Allentown facility, used the license plate numbers to retrieve the addresses of the vehicles' owners from Pennsylvania motor vehicle records, and then contacted the owners at their homes. *See* Am. Compl. ¶ 43. Contending that this alleged conduct violates the Driver's Privacy Protection Act of 1994 ("DPPA" or the "Act"),[1] plaintiffs initiated this action against UNITE, UNITE's president (Bruce Raynor), and the International Brotherhood of Teamsters AFL–CIO ("Teamsters," and collectively with UNITE and Raynor, the "Unions").

The Unions have filed motions to dismiss[2] making two principal arguments.[3]

---

1. Pub.L. No. 103–322, §§ 300001–300003, 108 Stat. 1796, 2099–2102 (codified at 18 U.S.C. §§ 2721–2725).

2. The Court may grant a motion to dismiss under Rule 12(b)(6) "only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In other words, we will not grant such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000) (permitting dismissal "only if it appears that the [plaintiffs] could prove no set of facts that would entitle [them] to relief"). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996).

First, they maintain that, even assuming that the alleged activities occurred, the DPPA would not prohibit them. *See* Teamsters Br. at 3–9. Second, the Unions assert that we should dismiss this case because the National Labor Relations Board ("NLRB") has primary jurisdiction over their dispute with the plaintiffs. *See* UNITE Br. at 10–20. We consider each argument in turn.

### I. *DPPA*

Unless one of its exceptions applies, the DPPA forbids state officials from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department [of motor vehicles] in connection with a motor vehicle record." 18 U.S.C. § 2721(a) (2004). It also prohibits others from "obtain[ing] or disclos[ing] personal information[ ] from a motor vehicle record" and from "mak[ing] false representation[s] to obtain any personal information from an individual's motor vehicle record," unless one of the Act's exceptions applies. 18 U.S.C. § 2722 (2004). Violators are subject to criminal fines and civil liability to private plaintiffs. 18 U.S.C. §§ 2723–24 (2004).

In this case, the complaint plainly alleges that the Unions gained "access" to the plaintiffs' personal information from Pennsylvania motor vehicle records. Am. Compl. ¶ 43. Recognizing that this allegation states a prima facie case under the DPAA, the Unions rely on the Act's authorization of such access "[f]or use in

connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process [or] investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4) (2004) (the "litigation exception"). More specifically, the Unions maintain that the litigation exception applies here because the complaint alleges that they obtained the plaintiffs' personal information as part of a union organizing effort, activity protected under the National Labor Relations Act ("NLRA"). *See* 29 U.S.C. § 157 (2004).

█ The litigation exception would permit the Unions to obtain the plaintiffs' personal information for use in an actual, pending National Labor Relations Board ("NLRB" or the "Board") proceeding or for use in an "investigation in anticipation of" such a proceeding. Because the complaint never identifies any proceeding in which the Unions might use this information, the Unions invite us to take judicial notice of the many NLRB proceedings involving their efforts to organize Cintas workers. Even if we took notice that some proceedings were pending before the NLRB, we could not discern for ourselves (without extensive review of the papers filed with the NLRB) either the issues in those proceedings or whether the Unions "use[d]" the plaintiffs' information in them. The parties have not supplied the kind of evidence that would permit this review, and, even if they had, we would not undertake it on a motion to dismiss. In short,

---

**3.** Apart from the two principal arguments discussed in the text, the Unions also maintain that the complaint fails to make sufficiently specific allegations. *See* UNITE Br. at 4–9. Because the Unions' other arguments betray their full awareness of the claims against them, we hold that the complaint provides sufficient notice to comply with Fed.R.Civ.P. 8. *See also* Am. Compl. ¶ 65 (alleging that the

Unions obtained personal information "for purposes not permitted by the DPPA"). Additionally, the Unions insist that the Norris–LaGuardia Act, 29 U.S.C. § 104 (2004), deprives us of authority to award the injunctive relief that the plaintiffs request. *See* UNITE Br. at 21–22. We take no position on this issue, preferring to reach remedial matters only if plaintiffs first establish liability.

we cannot grant the motion to dismiss on the grounds of the litigation exception because the complaint does not establish that the exception applies here.

After discovery has afforded the parties an opportunity develop their arguments, the Unions may be able to prove that the litigation exception permitted them to access the plaintiffs' personal information. Because this issue will probably arise again at the summary judgment stage, we briefly digress to explain how we interpret two critical parts of the litigation exception.

■ First, the exception applies only if a defendant obtains protected information for a permitted "use." As we construe the term, "use" implies a reasonable likelihood that the decision maker would find the information useful in the course of the proceeding. For example, if the Unions claimed before the Board that Cintas somehow rigged a certification election so that the results did not accurately reflect the number of employees who wanted union representation, they would need to identify which employees actually desired such representation. Obtaining personal information about employees to contact them regarding how they voted would be a permissible "use" because it is reasonably likely that the Board would need to know which employees supported unionization. On the other hand, the litigation exception would not apply if the Unions argued before the NLRB that Cintas engaged in an unfair labor practice by hiring security guards to keep them from recording employee license plate numbers because it is not reasonably likely that the Board would require any information about which employees parked in a particular lot to resolve the issue.

■ The second part of the litigation exception that deserves exposition is the phrase "investigation in anticipation of litigation." We understand the word "litigation" to encompass all manner of proceedings identified in § 2721(b)(4), including Board proceedings. More critically, however, for this portion of the litigation exception to apply, the Unions must prove that (1) they undertook an actual investigation; (2) at the time of the investigation, litigation appeared likely; and (3) the protected information obtained during the investigation would be of "use" in the litigation, as we interpreted that term above. This construction ensures that individuals' statutorily recognized rights to the privacy of their motor vehicle records are not sacrificed whenever a litigant raises the possibility of a tenuous connection between the protected information and issues tangentially related to a conceivable litigation strategy.

## II. *Primary Jurisdiction*

The Unions also argue that we should dismiss this action because the NLRB has "primary jurisdiction . . . to balance the[ ] interests" implicated by the Unions' alleged violations of the DPAA. UNITE Br. at 11.

■ This argument rests on the principles that the Supreme Court articulated in the landmark case *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). There, the Court faced the question of whether a state court could order a union to pay damages to a lumber company when the basis of the union's liability was a state law that prohibited the union's picketing. Recognizing the problems posed by "the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes," the Court emphasized that "Congress has en-

trusted administration of the labor policy for the Nation to a centralized administrative agency [*i.e.*, the NLRB], armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." *Id.*, 359 U.S. at 242, 79 S.Ct. at 778. To avoid conflict between state and federal regulation of labor relations, therefore, the Court held that, "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *Id.*, 359 U.S. at 244, 79 S.Ct. at 779. In other words, *Garmon* requires "the States to yield to the primary jurisdiction of the National Board" when "an activity is arguably subject to § 7 or § 8 of the Act." *Id.*, 359 U.S. at 245, 79 S.Ct. at 780. Premised as it was on the need to avoid federal-state conflict, *Garmon* simply does not apply to this case, which concerns the arguable conflict of two federal laws, the NLRA and the DPPA.

■ Of course, another line of cases recognizes that the Board's exclusive jurisdiction over complaints of unfair labor practices divests the district courts of power to interfere with the Board's functioning. *See, e.g., Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Even these cases, however, do not assist the Unions because the plaintiffs are not complaining of unfair labor practices. Plaintiffs here allege only that the Unions' conduct violated the DPPA, a federal law with which the NLRB has no expertise. Moreover, the NLRB has no jurisdiction—exclusive or otherwise—over

the plaintiffs' DPPA claim because Congress has not authorized it to enforce that statute. Since the NLRB lacks the power to adjudicate DPPA claims, deferring to the Board here would effectively deny the plaintiffs any opportunity to vindicate their privacy rights under the DPPA.

■ For these reasons, the Unions' "jurisdictional" arguments essentially collapse into a plea that we should construe the DPPA as permitting the conduct at issue here. The Unions suggest that courts have long approved of unions using information from motor vehicle records to contact employees during organizing campaigns. *See, e.g., Lechmere, Inc. v. NLRB*, 502 U.S. 527, 540, 112 S.Ct. 841, 849, 117 L.Ed.2d 79 (1992) (discussing the union's "success" in contacting employees directly through home visits).[4] Because the DPPA's legislative history never mentions the Act's potential effects on this practice, the Unions ask us to infer that Congress intended not to prohibit it.

We may well agree that Congress probably did not consider carefully the effect that the DPPA would have on union organizing. But it is quite another matter to use such speculation as a basis upon which to infer that Congress affirmatively intended for the Unions' alleged conduct to be exempt from the DPPA. Though the Unions would have us in effect write a new paragraph (15) describing a "labor exception" to the DPPA and append it to the 14 paragraphs that Congress did choose to include in § 2721(b), we prefer to rely on the text of the Act. If Congress believes that the conduct at issue here should not be subject to the DPPA, it may amend § 2721(b). Rather than redraft the statute,

4. The cases on which the Unions rely are neither uniform nor persuasive. Indeed, the Unions concede that some cases have found the gathering of license plate numbers to be impermissibly coercive, and the cases that do approve of the practice either predate the DPAA or do not discuss the Act's impact on it.

however, we shall simply deny the Unions' motion to dismiss.